<u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"), Andrew Gomes, the entities identified in Exhibit A attached hereto (collectively NIRP)[1], and Dr. Jay Radhakrishnan, MD ("Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

<u>RECITALS</u>

A.  Defendant Andrew Gomes (Gomes) is a resident of the State of Texas. He is a board-certified radiologist licensed to practice medicine in the State of Texas. Gomes is an enrolled Medicare provider.

B.  Gomes established Defendants National Interventional Radiology Partners, PLLC and NIRP Management, LLC, and the Defendant holding companies and surgical centers (all are identified in Exhibit A) to manage physician owned surgical centers to evaluate and treat peripheral arterial disease. These surgical centers, also identified in Exhibit A, are enrolled in the Medicare program. Gomes is the registered agent for the surgical centers identified in Exhibit A, and he uses 3730 Kirby Drive, Suite 1200, Houston, Texas 77098 as his primary business address.

C.  Relator, Dr. Jay Radhakrishnan, is a board-certified radiologist licensed to practice medicine in the State of Texas.

D.  On or about December 10, 2018, Relator filed a *qui tam* action in the United States District Court for the Southern District of Texas, captioned: *United States ex rel. Dr. Jay Radhakrishnan, MD vs. Andrew Gomes, National Intervention Radiology Partners, PLLC, et al.* – Cause No. 4:18-cv-04650; pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C.

---

[1] Which also operates under the DBA PAD Specialists.

**EXHIBIT 1**

§ 3730(b) (the "Civil Action"). In his Complaint the Relator alleged that Gomes, through physician owned outpatient surgical centers, was paying physician investors for referrals disguised as dividends, in violation of the Anti-Kickback Statute [42 U.S.C. § 1320a-7b(b)(2)] (AKS).

E. The United States contends that Defendants submitted or caused to be submitted false claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare").

F. The United States contends that it has certain civil claims against Defendants arising from the false claims submitted to Medicare based upon the following alleged conduct during the period January 1, 2015 through July 31, 2022. Specifically, the United States contends that Gomes, individually and through his management company – Defendant NIRP Management, LLC, and the other named Defendants (See Exhibit A) – in violation of the FCA, submitted and caused to be submitted, false claims to Medicare by offering and providing illegal remuneration to physicians to induce referrals to the Defendant surgical centers in which the referring physicians held equity ownerships in violation of the AKS. The conduct described in this paragraph is referred to hereinafter as the "Covered Conduct."

G. This Settlement Agreement is neither an admission of liability by Defendants nor a concession by the United States that its claims are not well founded.

H. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.  Gomes shall pay to the United States eight million eight hundred eighty-four thousand and ninety-one dollars ($8,884,091) ("Settlement Amount"), of which four million four hundred forty-two thousand and forty-five dollars and fifty cents ($4,442,045.50) is restitution. Payment shall be made by electronic funds transfer pursuant to written instructions provided to Defendants by the Office of the United States Attorney for the Southern District of Texas as follows: (1) $500,000 (Five Hundred Thousand Dollars) no later than 10 days after the Effective Date of this Agreement; (2) $1,500,000 (One Million Five Hundred Thousand Dollars) no later than 45 days after the Effective Date of this Agreement; and (3) the final balance of $6,884,091 (Six Million Eight Hundred Eighty-Four Thousand and Ninety-One Dollars) the earlier of either (a) the closing date of the sale of one or more of the Defendant entities or (b) the 11th month to the day following the Effective Date of this Agreement. Interest shall accrue on a daily basis at an annual rate of 4.5% on the outstanding balance due ($6,884,091.00) until that full and final payment is made. Interest will begin to accrue after 45 days of the effective date of this Agreement.

2.  Conditioned upon the United States receiving each payment due under this Agreement, and as soon as feasible after receipt of each such payment, the United States shall pay 19% of each installment to the Relator by electronic funds transfer ("Relator's Share") pursuant to written instructions provided by Relator to the United States Attorney's Office for the Southern District of Texas. Payment to Relator is contingent on receipt by the United States of each payment identified in Paragraph 1. Relator shall be entitled to a 19% share of the interest accrued on the outstanding balance of $6,884,091 (Six Million Eight Hundred Eighty-Four Thousand and Ninety-One Dollars).

3.  In the event that Gomes fails to pay any amount as provided in Paragraph 1 within 30 days of the date on which such payment is due, Gomes shall be in default of his payment

obligations (Default). In the event of such Default, OIG-HHS may exclude Defendants from participating in all Federal health care programs until Gomes/Defendants pay the Settlement Amount and reasonable costs as set forth in Paragraph 1, above. OIG-HHS will provide written notice of any such exclusion to Gomes. Defendants waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7); and agree not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion Defendants wish to apply for reinstatement, Defendants must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Any excluded Defendant will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

4. Gomes shall pay directly to Relator ninety-four thousand one hundred and fifty dollars ($94,150) in settlement of Relator's claim for reasonable expenses, attorneys' fees, and costs under 31 U.S.C. § 3730(d)(1)-(2) ("Fees Payment"). The Fees Payment is to be paid to Relator's Counsel no later than ten (10) days after the Effective Date of this Agreement pursuant to written instructions to be provided by Relator's Counsel to Defendants.

5. Subject to the exception/ns in Paragraph 7 (concerning reserved claims) below, and upon the United States' receipt of the full Settlement Amount under Paragraph 1, the United States releases Defendants (together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them) from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

6. Subject to the exceptions in Paragraph 7 below, and upon the United States' receipt of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Defendants together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors, attorneys, agents and assigns of any of them; the officers, directors, trustees, and employees thereof; and the heirs, successors, attorneys, agents and assigns of the individual Defendants, from any civil monetary claims the Relator has on behalf of himself or on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, and any claims Relator has asserted, could have asserted, or may assert in the future, related to the Covered Conduct or related to the allegations in the Civil Action, except as provided for in this Agreement.

7. Notwithstanding the releases given in Paragraph 5 of this Agreement, or any other term of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability of individuals;

    g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    h. Any liability for failure to deliver goods or services due;

      i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

      j. Any liability for (i) claims involving unlawful or illegal conduct based on State or federal antitrust violations; and (ii) claims involving unfair and/or deceptive acts and practices or violation of Texas' consumer protection laws.

8. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agrees and confirms that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

9. Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Defendants (together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors, attorneys, agents and assigns of any of them; the officers, directors, trustees, and employees thereof; and the heirs, successors, attorneys, agents and assigns of the individual Defendants) from any liability to Relator arising from the filing of the Civil Action

10. Defendants waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

11. Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

12. Defendants fully and finally release the Relator from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relator, related to the Civil Action and the Relator's investigation and prosecution thereof.

13. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, or carrier) or any state payer related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

14. Defendants agree to the following:

    a.    <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

    i.    the matters covered by this Agreement;

    ii.    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

7

    iii.    Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

    iv.    the negotiation and performance of this Agreement;

    v.    the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys' fees; and

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

    b.    <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for in nonreimbursable cost centers by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.  Defendants will separately account for all Unallowable Costs through (1) accounting records, to the extent possible; (2) memorandum records, including diaries and informal logs, where accounting records are not available; or, (3) good faith itemized estimates, where no other accounting basis is reasonably available.

    c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendants further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program,

8

including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment. Defendants shall identify these unallowable costs through: 1) accounting records to the extent that is possible; 2) memorandum records including diaries and informal logs, regardless of whether such records are part of official documentation, where accounting records are not available; and 3) itemized estimates where no other accounting basis is available.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

      d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

15. If within ninety-one (91) days of the Effective Date of this Agreement or after of any payment made under this Agreement, Defendants commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization,

or relief of debtors (a) seeking to have any order for relief of Defendants' debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets, Defendants agree as follows:

a.  The obligations of Defendants under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Defendants' were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payments made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Defendants.

b.  If the obligations of Defendants under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided above. Defendants agree that: (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Defendants shall argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 120 calendar days of written notification

10

to Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on January 1, 2015; and (iii) the United States has a valid claim against Defendants, jointly and severally, in the Settlement Amount, minus all amounts previously paid to the United States, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

c.   Defendants acknowledge that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

16.   Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of its directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

17.   This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 (waiver for beneficiaries paragraph) below.

18.   Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

19. Upon receipt of the initial two payments totaling $2,000,000 described in Paragraph 1 above, the United States and the Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action. The Stipulation of Dismissal shall be with prejudice to the United States as to the Covered Conduct and without prejudice to the United States as to all other claims. The dismissal shall be with prejudice to the Relator as to all claims against Defendants.

20. Each party shall bear their own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

21. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

22. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Texas, Houston Division. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

24. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

25. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

27. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

28. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

29. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement").  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

**THE UNITED STATES OF AMERICA**

DATED: _____    BY: _____
ANDREW BOBB
*Digitally signed by ANDREW BOBB
Date: 2024.06.27 09:15:34 -05'00'*
Andrew A. Bobb
Assistant United States Attorney
Southern District of Texas

DATED: _____    BY: _____
LISA RE
*Digitally signed by LISA RE
Date: 2024.06.25 15:15:33 -04'00'*
Susan E. Gillin
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

14

**DEFENDANT NIRP**

DATED: 6/21/24        BY: _____
                          Andrew E Gomes
                          NIRP


DATED: June 21, 2024   BY: _____
                          Michael Clark
                          Womble Bond Dickinson LLP
                          *Counsel for NIRP*

**RELATOR JAY RADHAKRISHNAN, MD**

DATED: 6/21/24    BY: _____
                      Jay Radhakrishnan, MD


DATED: 6/21/2024   BY: _____
                      Cory S. Fein
                      Cory Fein Law Firm
                      *Counsel for Relator*

# EXHIBIT A

## NIRP SETTLEMENT AGREEMENT

Management Entities/Individual(s):

    Andrew Gomes
    National Interventional Radiology Partners, PLLC;
    NIRP Management, LLC;

Holding Entities:

    NIRP Beaumont Holding, PLLC
    NIRP Corpus Christi, Holding PLLC
    NIRP Houston Holding, PLLC
    NIRP Katy Holding, PLLC
    NIRP Victoria Holding, PLLC
    NIRP Woodlands Holding, PLLC

Surgical Centers:

    NIRP Beaumont, PLLC
    NIRP Corpus Christi, PLLC
    NIRP Houston, PLLC
    NIRP Katy, PLLC
    NIRP Pasadena, PLLC
    NIRP Sugar Land, PLLC
    NIRP Victoria, PLLC
    NIRP Woodlands, PLLC

[COLLECTIVELY NIRP]